ERIE-LACKAWANNA RD. CO., APPELLANT, *v.* PUBLIC UTILITIES
COMMISSION OF OHIO, APPELLEE.

(No. 41330—Decided May 21, 1969.)

*Mr. Wallace R. Steffen,* for appellant.
*Mr. J. Philip Redick, Mr. I. Charles Rhoads* and *Mr. Harry R. Paulino,* for appellee.

*Per Curiam.* The dispositive contention of the appellant is that the "finding" in the order of the commission that the project is "reasonably necessary and expedient" is not supported by the evidence. The findings of fact upon which the commission based its order can be found only in the examiner's report, which is incorporated by reference in the commission's order.

The Director of Highways has the burden of proof and must establish, by a preponderance of the evidence, that the proposed grade separation is necessary and expedient.

The only findings of fact which the examiner makes in his report are that:

1. Eight thousand to nine thousand vehicles use the crossing daily.

2. On the average there are 24 train movements transversing the crossing daily. Some train operations near the crossing cause the flasher to operate when no trains are transversing or intend to transverse the crossing and, thus, impede the smooth flow of traffic.

3. The crossing is used for emergency vehicles by the fire and police departments.

4. The proposed improvement would eliminate an existing traffic safety problem at the intersection of Pine Street and St. John Avenue.

5. The railroad's contention that a proposed merger with another railroad will affect the crossing is speculative.

6. The record establishes that it is not impossible for the improvement to be built due to the financial condition of the appellant.

An examination of the record discloses that there is no evidence that the grade crossing must be eliminated in order to correct the existing traffic problem at the Pine Street and St. John Avenue intersection, although this is argued by the appellee in its brief.

It is not disputed that prior to the time this cause was decided by the commission the merger of the Erie-Lackawanna Railroad Company with the Norfolk and Western Railway Company had been approved by the Interstate Commerce Commission and the Public Utilities Commission had been notified of that decision.

There is no evidence in the record that any emergency vehicle was ever blocked at this crossing and the evidence of the appellant indicates that the appellant offered to install a control device at this crossing which would assure that no emergency vehicle would ever be blocked at this crossing.

There is no evidence in the record that the proposed grade separation would contribute to the future development of the area south of the crossing, although this is argued by the appellee in its brief.

No school buses or commercial buses use this crossing, and, with one minor exception which was not caused by a failure of the warning signals, no accident has occurred at this crossing. There is no evidence that this is a dangerous crossing. The evidence is that there are automatic flasher signals with back lights, which means four flashing lights are visible when a train is approaching the crossing. At a distance of 15 to 20 feet from the crossing the track is visible in both directions to the horizon.

The evidence shows that the railroad officials offered to improve the warning system by eliminating the flashing signals initiated by train movements where the train initiating the signal was not going to transverse the crossing.

The record discloses that, following the merger, the number of train movements transversing the crossing each day will be reduced from 24 to 6, and will be reduced even further when the passenger train movements are eliminated.

The finding of the commission, that "it is not impossible for the improvement to be built due to the financial condition of the appellant," places a burden upon the appellant which it is not required by law to assume. The appellant does not have to bear the burden of proving that it is impossible for the improvement to be built due to its financial condition.

The only findings of fact in the examiner's report, incorporated by reference in the commission's order, which are supported by the record, are the findings that there were eight thousand to nine thousand vehicles using the crossing daily and that, at the time of the hearing before the examiner, there were an average of 24 train movements transversing the crossing daily. There is no credible evidence which compares this volume of traffic with the volume of traffic using the 26 other similarly protected grade crossings in the city of Lima and the 45 others in Allen County or with other grade crossings in the state.

There is no substantial evidence concerning delays suffered by drivers of vehicles using the crossing.

It may be that the Director of Highways has determined that every railroad grade crossing which a city asks to be eliminated should be eliminated on the basis that it is potentially dangerous. Some members of this court may personally share that view. However, the General Assembly has not as yet enacted into law such a policy for this state.

Perhaps the Director of Highways could have produced evidence that this crossing is dangerous; that the

volume of traffic at this crossing, and the number of trains transversing it, are such that costly time-consuming delays occur which require that it be eliminated; that the economic development of a portion of the city is, in fact, being jeopardized by this crossing; that fire insurance rates are being adversely affected for residents of the city by reason of this crossing; or that adequate police protection is being denied a portion of the city by reason of this crossing.

Although arguments along these lines are made by the appellee in its brief, no substantial credible evidence appears in the record to support any of these positions.

The findings of fact in the examiner's report, which are supported by the evidence in the record that there are eight thousand to nine thousand vehicles using this crossing daily, and that, at the time of the hearing, there were 24 train movements over this crossing daily, are not sufficient to support the order that the elimination of this grade crossing is necessary and expedient.

The order of the commission is, therefore, reversed.

*Order reversed.*

ZIMMERMAN, O'NEILL, DOYLE and SCHNEIDER, JJ., concur.

DOYLE, J., of the Ninth Appellate District, sitting for HERBERT (PAUL M.), J.

TAFT, C. J., concurring. Both the order of the commission and the report of the attorney examiner, which the order adopted in its entirety, contain only the following as findings of fact:

"(1) The appeal is properly before the commission pursuant to Section 5523.16 of the Revised Code.

"(2) The commission has jurisdiction to hear and determine the issues presented herein.

"(3) The appellee, the Director of Highways of the

State of Ohio, has the burden of proving by a preponderance of the evidence that the proposed grade separation improvement is reasonably necessary and expedient.

"(4) The appellee herein has sustained its burden of proving that the grade separation is reasonably necessary.

"(5) The appellee has sustained its burden of proving that the proposed grade separation is expedient as of the time of the hearing."

Section 4903.09, Revised Code, reads:

"In all contested cases heard by *the* Public Utilities *Commission,* a complete record of all of the proceedings shall be made, including a transcript of all testimony and of all exhibits, and the commission *shall file,* with the records of such cases, *findings of fact and written opinions setting forth the reasons prompting the decisions* arrived at, *based upon said findings of fact.*" (Emphasis added.)

In *Commercial Motor Freight, Inc.,* v. *Pub. Util. Comm.* (1951), 156 Ohio St. 360, 102 N. E. 2d 842, this court construed the predecessor of Section 4903.09, Revised Code, to require the commission to make and state its findings of fact from the evidence, as well as to state its ultimate conclusions, and to state the reasons for the conclusions reached. Under a 1953 amendment, the language of Section 4903.09 is even more explicit in this regard. In this case, no reasons for its conclusions are stated by the commission.

The commission has apparently misinterpreted our subsequent decisions in *New York Central Rd. Co.* v. *Pub. Util. Comm.* (1955), 164 Ohio St. 289, 130 N. E. 2d 365, and *Mt. Vernon Telephone Corp.* v. *Pub. Util. Comm.* (1955), 163 Ohio St. 381, 127 N. E. 2d 14. In paragraph four of the syllabus of the latter case it was said that an order satisfies Section 4903.09, Revised Code, "where the order fully covers the evidence, finds the ultimate facts upon which it is based and fully sets forth the reasons therefor." This was in no way a mitigation of the criticisms of commission practices in *Motor Freight* which reappear

**118**

as defects in the opinion of the commission in the instant case.

As stated in *Motor Freight*, at page 363:

"Probably the principal purpose of * * * [what is now Section 4903.09, Revised Code], was to enable this court to review the action of the commission without reading the voluminous records in Public Utilities Commission cases. Where the commission states the facts found upon which it bases its decision, this court can usually readily determine, as it is required to do by * * * [what is now Section 4903.13, Revised Code], whether the order of the commission is 'unlawful or unreasonable.' A review of the essential facts so found can also be made with the help of record references supplied by opposing counsel in their briefs. The General Assembly never intended this court to perform the same functions and duties as the Public Utilities Commission but it did intend that this court should determine whether the facts found by the commission lawfully and reasonably justified the conclusions reached by the commission in its order and whether the evidence presented to the commission as found in the record supported the essential findings of fact so made by the commission."

MATTHIAS, J., concurs in the foregoing concurring opinion.